IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

REGINALD EMMIT BLOUNT, )
)
Petitioner, )
)
v. )          CV 118-112
)            (Formerly CR 116-042)
UNITED STATES OF AMERICA, )
)
Respondent. )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner, an inmate at the Federal Correctional Institution in Edgefield, South Carolina, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion to withdraw Ground One be **GRANTED**, (doc. no. 26), Ground Two be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

A.      **Indictment and Pretrial Proceedings**

On July 6, 2016, the grand jury in the Southern District of Georgia charged Petitioner in a four-count indictment. United States v. Blount, CR 116-042, doc. no. 1 (S.D. Ga. July 6, 2016) (hereinafter "CR 116-042"). Along with naming Petitioner in a forfeiture allegation, the grand jury charged Petitioner with: possession with intent to distribute marijuana and oxycodone (Counts One and Two), possession of firearms in furtherance of drug trafficking crimes (Count Three), and possession of firearms and ammunition by a convicted felon

(Count Four).  Id.  Count One carried a possible statutory sentence of not more than five years, or not more than ten years if convicted of a previous felony offense.  Id., doc. no. 2. Count Two carried a possible term of imprisonment of not more than twenty years, and Count Three carried a possible term of not less than five years and up to life imprisonment *consecutive* to any other sentence.  Id.  As to Count Four, Petitioner faced a prison sentence of not more than ten years, or if deemed to be an armed career criminal under 18 U.S.C. § 924(e), not less than fifteen years or more than life imprisonment.

Petitioner retained attorney Tanya Jeffords to represent him.  Id., doc. no. 9.  Ms. Jeffords filed thirty-one pretrial motions, (id., doc. nos. 8, 10-12, 14-38, 40, 45), including a preliminary motion to suppress and a motion for an extension of time to particularize the suppression motion, (id., doc. nos. 38, 45).   In requesting the extension of time to particularize the motion to suppress, Ms. Jeffords explained the parties were in the process of working on a possible resolution of the case.  (Doc. no. 45, p. 1.)  The Court granted an extension of time, (doc. no. 46), but no additional motions were filed.  The Court received the plea agreement on September 26, 2016, and a change of plea notice entered September 30, 2016.  (Doc. no. 48.)

### B.    Agreement to Plead Guilty

On October 12, 2016, Petitioner appeared with counsel and pled guilty to possession of firearms and ammunition by a convicted felon as charged in Count Four.  Id., doc. nos. 49-51.  In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts against Petitioner in the indictment; (2) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to

the acceptance of responsibility reduction; and (3) consider filing a motion, based on any

"substantial assistance" provided by Petitioner, for downward departure under U.S.S.G.

§ 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35.  Id.,

doc. no. 51, pp. 3-4.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

> The elements necessary to prove the offense charged in Count Four are: (1) that the Defendant knowingly possessed a firearm in or affecting interstate commerce; and (2) before possessing the firearm, the Defendant had been convicted of a felony - a crime punishable by imprisonment for more than one year.

> Defendant agrees that he is, in fact, guilty of this offense.  He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:  that on or about May 5, 2016, in Richmond County in the Southern District of Georgia, the Defendant, who before that time had been convicted of one or more felonies, crimes punishable by imprisonment for a term exceeding one year, those are,

>> *Attempted Robbery*, convicted on September 1, 2010, in the Superior Court of Richmond County, Georgia, Case No. 2009RCCR01744; and,

>> *Possession of Marijuana*, convicted on December 11, 2013 in the Superior Court of Richmond County, Georgia, Case No. 2013RCCR00820.

> did knowingly possess, in and affecting commerce, firearms and ammunition, those are, a Glock, Model 23, .40 caliber, serial number PTC102 and a Sig Sauer, Model P220, a .45 caliber, serial number 37A012089; and eighty-three live rounds of assorted ammunition, all of which previously had been shipped or transported in interstate or foreign commerce; all done in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

Id. at 1-2.  With his signature on the Plea Agreement, Petitioner agreed he read and carefully

reviewed it with Ms. Jeffords, understood each provision, voluntarily agreed to it, and

"stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 10.

By signing the Plea Agreement, Petitioner further agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 6-7. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  Id.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel.  Id. at 7.  By signing the Plea Agreement, Petitioner additionally attested Ms. Jeffords had "represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."  Id. at 8.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court.  Id., doc. no. 74 ("Rule 11 Tr."), pp. 3, 6.  Judge Hall reviewed all the charges against Petitioner in the indictment, with specific focus on the charge in Count Four to which Petitioner was pleading guilty.  Id. at 6-7.  Petitioner confirmed he had as much time as he needed to go over the charges with Ms. Jeffords.  Id. at 7.  Petitioner also testified under oath he was satisfied with the assistance he had received from Ms. Jeffords and that he had read and reviewed the Plea Agreement with counsel before signing it.  Id. at 8, 10.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights.  Id. at 8-10.  Among the rights

4

explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 11-12. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 12. Additionally, Judge Hall reviewed the potential for a ten-year term of imprisonment for conviction on the felon in possession charge. Id. at 13. When asked, Petitioner confirmed that he understood the possible imprisonment penalty, as well as the potential $250,000 fine and three years of supervised release after completion of the term of imprisonment. Id. at 13.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report (PSI), and Petitioner's sentence would be based on the information in the PSI. Id. at 14-15. Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range. Id. at 15. Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence. Id. at 16.

Judge Hall next heard a factual basis for the guilty plea from Special Agent Ronald Rhodes with the Bureau of Alcohol, Tobacco, and Firearms. Id. at 16-19. SA Rhodes testified that on May 5, 2016, the Georgia Department of Community Corrections arrived at a residence on Bassford Drive in Hephzibah, Georgia, to conduct a probation check on Petitioner. Id. at 17. When Ebony Brown answered the door, officers smelled marijuana coming from the residence, and when Petitioner came to the door, officers informed him of a

Fourth Amendment waiver in place as a result of his probation for a 2013 conviction for possession with intent to distribute marijuana.  Id.  When officers entered the residence to search, they located 988 grams of marijuana and two firearms.  Id.  Petitioner was taken into custody.  Id.  SA Rhodes confirmed the firearms were stolen, had not been manufactured in Georgia, and had moved in interstate or foreign commerce.  Id. at 18.  Ms. Brown, the person who originally answered the door, stated - and Petitioner confirmed - none of the drugs or firearms discovered in the residence belonged to her.  Id.

On cross-examination, Ms. Jeffords elicited from SA Rhodes that he had not actually seen a Fourth Amendment waiver.  Id. at 19.  However, SA Rhodes explained Richmond County deputies, as well as the probation officers, were on the scene - Petitioner's record of residence - prior to ATF's arrival, and he was told there was a waiver.  Id.

After SA Rhodes concluded his testimony, Judge Hall stated the two elements the government would have to prove to convict Petitioner of the felon in possession charge to which he was pleading.  Id. at 20.  Judge Hall further confirmed with Petitioner that after hearing the testimony of SA Rhodes and knowing his own conduct, he was guilty of the charge and wanted to plead guilty because he was a convicted felon who had in fact possessed two firearms and ammunition on the date in question.  Id.  Petitioner responded affirmatively.  Id.

Judge Hall then summarized the proceedings as follows:

> Now that the plea has been signed and entered into the record of this hearing, the Court finds that the Defendant, Mr. Blount, is competent.  He fully understands the charge against him.  There is an independent factual basis supporting his plea of guilty contained in each of he essential elements of this offense.  He knows the statutory punishment that could be imposed on the charge, and he knows his jury rights which he has knowingly and voluntarily waived.

> I further find that Mr. Blount's decision to plead guilty this afternoon was voluntary, knowing, and not as a result of any force, pressure, threats, or promises other than the promises made by the Government in the Plea Agreement.  Therefore, Mr. Blount's plea is accepted and he is now adjudged guilty of count four of the Indictment based upon that guilty plea.

Id. at 21.

### C.    Sentencing

The United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at twenty-six, Criminal History Category at VI, and Guidelines imprisonment range at 120 to 150 months.  PSI ¶¶ 28, 42, 64.  Because one of the firearms was stolen and because Petitioner possessed a firearm in connection with the felony possession of illegal drugs, the base offense level of twenty was increased by two and four points, respectively.  PSI ¶¶ 19-21.  Petitioner did not receive a reduction for acceptance of responsibility, as he was charged with possession of prohibited items by an inmate while in custody at the Jefferson County Jail.  PSI ¶¶ 17, 27.  The statutory maximum term of imprisonment for Petitioner's offense was ten years.  CR 116-042, doc. no. 2, p. 2; PSI ¶ 63.  Had Petitioner been convicted of the 18 U.S.C. § 924(c) charge in Count Three dismissed as part of the Plea Agreement, the statutory penalty would have been not less than five years and up to life imprisonment, consecutive to any other sentence.  CR 116-042, doc. no. 2, p. 2; PSI ¶ 65.

The government did not file any objections to the PSI, and the objections Ms. Jeffords raised on Petitioner's behalf were resolved prior to sentencing before Judge Hall.  See PSI Add.; CR 116-042, doc. no. 76, ("Sent. Tr."), pp. 2-3.  In the Sentencing Memorandum submitted by Ms. Jeffords, she emphasized Petitioner's ties to the community and his family, argued Petitioner had matured from his younger days when he accrued the charges resulting in his high criminal history, and explained he had lost his acceptance of responsibility

reduction because of a cell phone charge in jail, not because Petitioner had refused to accept responsibility for the charge to which he had pleaded guilty. CR 116, 042, doc. no. 65; Sent. Tr. 4-5.

Judge Hall adopted the factual statements in the PSI, as well as the conclusions contained therein, and determined the advisory Guidelines range was 120 months imprisonment. Sent. Tr. 3. One of the un-objected to paragraphs of the PSI which Judge Hall adopted at sentencing explicitly stated, "Because the defendant had waived his 4th Amendment Rights as part of his conditions of supervision, a search was conducted of the defendant's residence." PSI ¶ 4. Prior to announcing the sentence, Judge Hall heard Ms. Jeffords recap her sentencing memorandum, three family members speak on Petitioner's behalf, and Petitioner himself apologize and "take full responsibility for" his actions. Sent. Tr. 4-14. Judge Hall imposed a term of imprisonment of 120 months, to be served consecutively to any term imposed for the revocation of his probation in Richmond County Superior Court. Id. at 38; CR 116-042, doc. no. 67.

In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

### D.    § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following two ineffective assistance of trial counsel claims:

(1)    Counsel failed to file an appeal after Petitioner instructed her to do so; and

(2)    Counsel failed to file a motion to suppress challenging the search of Petitioner's residence.

(See generally doc. no. 1.)

8

The Court scheduled an evidentiary hearing on Ground One and appointed attorney William J. Sussman to represent Petitioner.  (See doc. no. 16.)  The Court appointed Mr. Sussman only to represent Petitioner as to Ground One because Ground Two had been fully briefed, and the evidence of record in the case provided the Court with the necessary information to make its recommendation without further development of the record.  (See id.)  Prior to the hearing, Mr. Sussman filed a Motion to Withdraw Petition for Relief Under 28 USC 2255.  (Doc. no. 26.)  However, when Petitioner appeared with Mr. Sussman on the day scheduled for the evidentiary hearing, Petitioner clarified he only wished to withdraw Ground One of his motion.  (See doc. no. 27.)

As to Ground Two, Petitioner explained he did not recall ever signing a waiver of his Fourth Amendment rights, and therefore he wanted to challenge Ms. Jeffords' failure to file a motion to suppress on that basis.  The affidavit submitted by Ms. Jeffords in support of Respondent's opposition to the § 2255 motion averred she had learned "there was a valid fourth amendment waiver that the State produced in [Petitioner's] probation papers."  (Doc. no. 3-3, Jeffords Aff., ¶¶ 13, 39.)  The Court asked Respondent to search its files to determine if a signed waiver existed, and in a filing dated March 18, 2019, a signed waiver was filed into the record.  (See doc. no. 28, Ex. A.)  Petitioner did not respond to the filing.

## II.    DISCUSSION

With the assistance of counsel, Petitioner opted to file a motion to withdraw Ground One of his § 2255 motion.  The Court **REPORTS** and **RECOMMENDS** the motion to withdraw be **GRANTED**.  (Doc. no. 26.)  The Court explains below why Petitioner is not entitled to relief on Ground Two.

**A.      Petitioner's Guilty Plea Was In All Respects Knowing And Voluntary**

Petitioner contends he received ineffective assistance of counsel because Ms. Jeffords failed to appreciate she could have filed a successful motion to suppress challenging the warrantless search of his residence by probation officers and Richmond County Sheriff's deputies on May 5, 2016.  Prior to addressing the merits of the ineffective assistance claim, and to dispel all doubt about any implicit challenge regarding the knowing and voluntary nature of the guilty plea separate from the performance of Ms. Jeffords, the Court specifically concludes for the reasons below that Petitioner was not pressured to plead guilty and knew the nature of the charge, as well as the consequences of his plea.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).

A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his

plea cannot stand as an intelligent admission of guilt." Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall reviewed all the charges raised against Petitioner in the indictment, specifically informed Petitioner in clear terms of the charge to which he was pleading guilty, and reviewed the elements of the offense the government would have to prove to obtain a conviction.  Rule 11 Tr. 6-7, 20.  Petitioner testified he understood this information.  Id. at 7, 20.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 8-10.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement.  Id. at 3, 12.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction.  In particular, Judge Hall explained Petitioner could be sentenced up to ten years

in prison for conviction of Count Four to which Petitioner was pleading guilty.  Id. at 13.
Finally, Petitioner also testified he had enough time to discuss the charges with Ms. Jeffords,
reviewed the Plea Agreement with her prior to signing, and was satisfied with the help he
had received from her.  Id. at 7, 8, 10; see also Plea Agreement, p. 8 ("Defendant believes
that his attorney has represented him faithfully, skillfully, and diligently, and he is
completely satisfied with the legal advice given and the work performed by his attorney."); p.
10 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured that Petitioner understood both the
nature of the charge and the consequences of his guilty plea, and that Petitioner was not
coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Petitioner has not argued, let
alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding
he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83.  Indeed,
he does not raise any issue with the Rule 11 proceeding itself, but rather complains Ms.
Jeffords should have known a motion to suppress would have resulted in suppression of the
evidence used against him at the Rule 11 proceeding.

### B.   Ms. Jeffords' Performance as Defense Counsel Was Neither Deficient Nor Prejudicial

Ineffective assistance of counsel claims are subject to the two-part test enunciated in
Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500,
505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (per
curiam).  Under the first prong, Petitioner must show "counsel's representation fell below an
objective standard of reasonableness."  Strickland, 466 U.S. at 688.  Under the prejudice
prong of Strickland, a petitioner must show "that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### 1.   The Deficiency Prong of Strickland Is Highly Deferential when the Petitioner Has Pled Guilty

As to the first prong of Strickland, "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel."  Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (en banc), partially overruled on other grounds, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997).  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).   Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)).  The Court

must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry. As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759 (1970)].
>
> . . . [I]t is not sufficient for the criminal defendant seeking to set aside such a [guilty] plea to show that his counsel in retrospect may not have correctly apprised the constitutional significance of certain historical facts. . . .
>
> . . . Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement . . . might be factually supported.

Tollett v. Henderson, 411 U.S. 258, 267-68 (1973).

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (en banc) (quoting Wofford v Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984)). When a client pleads guilty, defense counsel "need only provide [her] client with an understanding of the law in relation to the facts, so that the accused may make an informed

and conscious choice between accepting the prosecution's offer and going to trial." Id.; see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (per curiam).  Counsel can impart such an understanding by offering her informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue.  Wofford, 748 F.2d at 1508.

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  Chandler, 218 F.3d at 1317.  Counsel is not required to "pursue every path until it bears fruit or until all available hope withers."  Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).  As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."  McMann, 397 U.S. at 770.

### 2.	Ms. Jeffords Forgoing a Particularized Motion to Suppress Was Not Constitutionally Deficient

Applying the Strickland standard, it cannot be said Ms. Jeffords' performance fell below an objective standard of reasonableness concerning a motion to suppress.  The Court quickly dispenses with the argument there was no valid waiver in place because Petitioner could not recall signing a Fourth Amendment waiver as part of his probation terms.  As evidenced by Respondent's supplemental filing, Petitioner did sign paperwork agreeing to a warrantless search of, inter alia, his person and residence if a probation officer or other law enforcement officer had "reasonable cause" to believe Petitioner was violating the terms of his probation or otherwise violating the law.  (Doc. no. 28-1, pp. 5, 7, 10.)  Yet even if the was some question about whether Petitioner had actually signed a waiver, Ms. Jeffords'

15

tactical decision to leverage the possibility of a motion to suppress to negotiate a favorable plea agreement was an objectively reasonable choice.

Petitioner argues when officers arrived at his residence, they had no reasonable suspicion of wrongdoing based on the reported smell of unburnt marijuana.  According to Petitioner, because the vacuum-packed marijuana discovered during the search was located approximately forty feet from the foyer of his residence in a duffle bag wrapped in plastic, the officers could not have possibly smelled unburnt marijuana, and therefore should not have conducted a warrantless search.  (Doc. no. 1, pp. 22-23.)  Petitioner further contends that because the government dismissed three of the four charges in the indictment as part of the Plea Agreement, it knew there was "a problem with the evidence and the search, therefore, substantiating Petitioner's claim of a Fourth Amendment violation." (Id. at 23.)

The Eleventh Circuit has long approved of warrantless searches of probationers and routinely upholds such warrantless searches of probationers based on reasonable suspicion such as that present in the instant case.  See Owens v. Kelley, 681 F.2d 1362, 1368 (11th Cir. 1982); United States v. Riley, 706 F. App'x 956, 959-61 (11th Cir. 2017) (per curiam); United States v. Bishop, 683 F. App'x 899, 907-09 (11th Cir.) (per curiam), cert. denied, 138. S. Ct. 347 (U.S. 2017).  "Reasonable suspicion exists when, under the totality of the circumstances, officers have a particularized and objective basis for suspecting legal wrongdoing."  Bishop, 683 F. App'x at 908 (citing United States v. Yuknavich, 419 F.3d 1302, 1311 (11th Cir. 2005)).  The smell of marijuana alone may satisfy the reasonable suspicion standard.  United States v. White, 593 F.3d 1199, 1203 (11th Cir. 2010).

As explained in the Case Report of Petitioner's arrest, Richmond County Sheriff's Deputies were accompanying probation officers while conducting compliance checks on

May 5, 2016.  (Doc. no. 3-2, pp. 2-3.)  When a probation officer made contact with the person opening the door at Petitioner's residence, "a very strong odor of green Marijuana was smelled by Deputy Green coming from inside the home."  (Id. at 2.)  Ms. Jeffords was faced with filing a motion to suppress that would come down to a credibility battle between a law enforcement officer who said he smelled marijuana, providing reasonable suspicion to search, and Petitioner or another resident in the house who would say there was no smell.

The uncertainty of proceeding with a challenge to reasonable suspicion at a suppression hearing is succinctly summarized by Respondent as follows:

> The distance between the packaged marijuana and the front door of Blount's home could not completely dissipate reasonable suspicion based on the officers' testimony.  Despite that distance, the smell of marijuana could still have been apparent outside for any number of reasons:  because, as a drug dealer (PSI ¶ 37), Blount regularly was transporting the marijuana in and out of his home, or because, as a longtime drug user and Gangster Disciple aficionado (PSI ¶¶ 5, 53), Blount was smoking some of that marijuana in his home, or because some other unknown person recently smoked marijuana in the vicinity.

(Doc. no. 3, p. 7.)

Moreover, as Ms. Jeffords explains, when she first began work on the case, she thought her best suppression argument was that Petitioner had not signed a Fourth Amendment waiver.  While it turned out that premise was false, even the argument about a missing signature may have been subject to challenge by the government, as there is case law suggesting that even if a waiver provision has not been signed, a probationer may be validly subject to a warrantless search.  See United States v. Denton, No. CR 111-546, 2012 WL 3871929, at *6-10 (N.D. Ga. June 19, 2012), adopted by, 2012 WL 3871927 (N.D. Ga. Sept. 5, 2012) (collecting and reviewing case law explaining reasonable suspicion analysis applies

to warrantless search of probationers, even in absence of statutory or regulatory provision allowing warrantless search).

Nevertheless, Ms. Jeffords was able to use the *possibility* of a motion to suppress based on a *potential* absence of a signed waiver (which later proved untrue when the signed paperwork was uncovered) in plea negotiations to substantially limit Petitioner's sentence exposure by obtaining an agreement from the government to dismiss all but the felon in possession charge.  (Jeffords Aff., ¶ 10.)  As originally charged, Petitioner faced statutory terms of imprisonment of up to at least twenty-five years in total on the first two Counts and a consecutive five-year term on Count Three.  CR 116-042, doc. no. 2.  As "[a]n objectively reasonable lawyer could have chosen to file no motion to suppress," Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006), Petitioner has not satisfied the first prong of Strickland.

To the extent Petitioner claims he told Ms. Jeffords specifically to file a motion to suppress, the record belies his after-the-fact contention.  First, Ms. Jeffords denies Petitioner directed her to file a particularized motion to suppress.  (Jeffords Aff., ¶¶ 11-12, 14.)  Moreover, even without consideration of Ms. Jeffords' affidavit, at the Rule 11 proceeding, Petitioner, under oath, told Judge Hall he was satisfied with the assistance he had received from Ms. Jeffords, understood the rights he was giving up by pleading guilty, and was in fact guilty.  Rule 11 Tr. 7-10, 20; see also Plea Agreement, p. 8.  "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements

were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

Petitioner may not now escape the consequences of his sworn declarations to Judge Hall by belatedly claiming Ms. Jeffords refused an explicit direction to file a particularized motion to suppress.

### 3.   Petitioner Cannot Meet the Prejudice Prong of Strickland

Even if Petitioner had shown deficient performance, which he has not, under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v.

Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas."  Hill, 474 U.S. at 58.  Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea.  Stano, 921 F.2d at 1150-51.

Here, the record shows Ms. Jeffords negotiated a favorable plea agreement that dismissed three out of four charges against Petitioner and substantially limited his sentencing exposure.  Ms. Jeffords presented the offer to Petitioner and "asked him whether he wanted to go ahead with the plea offer or file the motion to suppress after discussing the legal merits of the case, the issue regarding the waiver, and the fact that the officers also smelled marijuana.  Mr. Blount made the decision not to file the particularized Motion to Suppress and to accept the plea." (Jeffords Aff., ¶ 11.)  In his sworn testimony to Judge Hall, Petitioner confirmed he had reviewed the case and Plea Agreement with Ms. Jeffords, was satisfied with the help Ms. Jeffords had provided, knew the rights he was giving up by pleading guilty, and wanted to plead guilty.  He never mentioned any problems or disagreement over forgoing the motion to suppress in exchange for the favorable plea agreement, let alone that he wanted to insist on his right to trial and pursuit of the motion to suppress.  Petitioner cannot escape his sworn declarations to Judge Hall in an after-the-fact assertion that he would have insisted on going to trial.  See Blackledge, 431 U.S. at 74; Rogers, 848 F.2d at 168; Stitzer, 785 F.2d at 1514 n.4.

Even once Petitioner lost his acceptance of responsibility reduction by accruing a cell phone charge in jail, there is nothing in the sentencing transcript suggesting Petitioner had changed his mind about entering the guilty plea.  To the contrary, Petitioner repeatedly told

Judge Hall he took "full responsibility" for his actions and that there was nobody to blame but himself for his current situation.  Sent. Tr. 11, 12-13.

"The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal."  <u>Harris v. United States</u>, No. CV 410-69/CR 407-285, 2011 WL 1740702, at *5 (S.D. Ga. Apr. 11, 2011), *adopted by*, 2011 WL 1740306 (S.D. Ga. May 5, 2011).  Petitioner cannot meet either prong of <u>Strickland</u>, and he is not entitled to relief on Ground Two.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion to withdraw Ground One be **GRANTED**, (doc. no. 26), Ground Two be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 3rd day of May, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA